**W. Hudson CONNERY, Jr., et al., Plaintiffs/Appellants,**

v.

**COLUMBIA/HCA HEALTHCARE CORP., et al., Defendants/Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

July 1, 1998.

Permission to Appeal Denied by
Supreme Court Dec. 14, 1998.

Patricia Head Moskal, Robert S. Patterson, Boult, Cummings, Conners & Berry, Nashville, Tennessee, for plaintiffs/appellants.

Paul S. Davidson, Stokes & Bartholomew, Nashville, Tennessee, for defendants/appellees.

*OPINION*

TODD, Presiding Judge, Middle Section.

Former employees of HealthTrust, Inc., have appealed from a summary judgment of the Trial Court dismissing their claims against their former employer and its successor, Columbia Healthcare Corporation.

Twenty former employees joined in the amended and supplemental complaint which was dismissed, but only eighteen have joined in this appeal, and one of them has moved to voluntarily dismiss his appeal. All appellants present the following issue for review:

I. Were the plaintiffs entitled to summary judgment on the issue of whether the restricted stock purchased with their 1994 bonuses vested upon the "change in control" of HealthTrust when it merged with Columbia in April 1995, as provided under the terms of the stock compensation plan of HealthTrust, thereby entitling the plaintiffs to delivery of their shares of restricted stock, or, alternatively, to the appreciated value of their restricted stock?

Fourteen of the appellants present a second issue, which is:

II. Were there genuine issues of disputed material facts precluding the entry of summary judgment in favor of defendants on the alternative issue of whether certain of the plaintiffs were terminated without cause from their employment with HealthTrust when it was merged with Columbia, thereby entitling those plaintiffs to the appreciated value of their restricted stock?

The amended and supplemental complaint and the depositions in the record contain the following facts which, unless otherwise indicated, are not disputed.

Before its merger with Columbia Health Corporation (hereafter Columbia) HealthTrust, Inc., (hereafter Health) employed a considerable number of executives, including the appellants. None were employed for a particular term. The employment of each was terminable at the will of the employer or employee. The compensation of each employee was determined from time to time by

a committee of the Board of Directors based upon the individual performance of each employee and the profitability of operations from year to year.

The Committee adopted a "Total Direct Compensation Plan" (hereafter, TDCP) which described the general scope and nature of compensation of executives, but reserved to itself absolute power to change the plan at any time as to any one or all of the executives. The TDCP included annual salary, annual bonus and long term incentives including the privilege of purchasing stock of Health at a favorable price. However, the vesting of title to the stock and its sale by the employee were restricted.

All of the claims of plaintiffs are based upon the TDCP and awards thereunder for the fiscal year ending August 31, 1994. On December 21, 1993, the Committee approved "targeted incentives bonuses" for each of the plaintiffs, conditioned upon each employee achieving targeted success in his work as thereafter determined by the Committee and that each employee might use up to his entire bonus to purchase stock.

In order to receive maximum tax advantage from purchase of stock, it was necessary for each employee to elect and report to the committee what part of his proposed (but not awarded) bonus he would use in purchasing stock.

In January, 1994, each of the plaintiffs notified the Committee of his election to use a specified part of his expected bonus to buy stock.

The plaintiffs insist that the notice of proposed incentive bonuses constituted an offer, and their notice of election to buy stock constituted an acceptance of the offer which produced a contract which bound their employer to pay the proposed bonus and sell the specified stock to each of the plaintiffs.

The defendants deny this claim because the proposals and elections were tentative, made in the middle of the year before the performance of each employee for the full year could be evaluated and the final, year-end determination was expressly reserved by the committee.

On April 24, 1995, Health merged with Columbia, but the Committee and the Board of Health continued to function.

On October 31, 1994, the Committee approved the final awards of bonuses to employees and the purchase of stock by the employees and "waived" a section of the TDCP which provided for delay in vesting but not of delivery or removal of restrictions of the stock by employees. The TDCP provided for "vesting" of employees' stock upon a "change of control" (the merger with Columbia).

On November 10, 1994, the Committee notified plaintiffs hat the stock they had elected to buy "will be held at the corporate office and will not be effected (sic) by the merger."

Subsequent to their January, 1994, election, plaintiffs received dividends on the stock they elected to buy, but no stock certificates.

Subsequent to the merger, some employees remained in the employment of Health, and some did not. None of the plaintiffs remained with Health. Plaintiffs insist that they were all discharged. Defendants deny this insistance and insist that no employee was discharged, but admit that there were changes in pay and work assignments. Plaintiffs insist that the changes in pay and work assignments were tantamount to discharge. Defendants reply that the appellants' refusal to accept changes in duties and compensation and/or acceptance of other employment consituted resignation or voluntary termination (quitting).

The terms of the merger provided that .88 share of Columbia stock would be issued in exchange for each share of Health stock.

The TDCP provided that any employee of Health "terminated without cause" would receive the market value of stock purchased under the plan. The phrase, "without cause" is ambiguous in that it is not clear whether the meaning is literal, meaning "for no reason" or whether it relates only to misconduct or deficiencies of performance by an employee.

Plaintiffs, Connery, Francis, Hobbs, Hough, Kennedy, Lambert, Martin, McCain, Moore, Pressley, Price, Slusser and Wallace,

insist that they were offered employment by Columbia which was not comparable with that held by them with Health, that they were "terminated without cause," and that they are therefore entitled to receive the market value of the stock purchased by them as of the date of termination.

Defendants insist that, since the employment of plaintiffs was "at will" (not for a specific term) it was subject to termination at any time by either party, that the duties and compensation of appellants were subject to change at any time by the employer, and that the employee was free to leave the employment at any time for any reason without liability for breach of contract. Defendants point out that each of plaintiffs was entitled to a "golden parachute" or bonus for discharge without misconduct, and argue that this arrangement supports their position that "without cause" was intended to mean "without fault". Defendants admit that plaintiffs were not guilty of any fault which would merit discharge, but that plaintiffs in effect resigned or "quit" because they were dissatisfied with the duties and/or compensation offered to them by Columbia and/or they were offered better positions with other firms.

The golden parachute was provided by a "Severance Plan Agreement" (hereafter SPA) which was executed by some, but not all of the appellants.

The SPA provided:

The severance pay and benefits provided in this section 3 shall be in lieu of any other severance or termination pay to which the executive may be entitled.

For the sake of brevity, the employees will hereafter be designated by surname only.

The plaintiffs testified in substance as follows:

Connery's salary with Health was $500,000 per year. He was offered continued employment at $29,000 per month ($348,000 per year), which he declined. In April, 1995, he organized a new corporation and hired Griffith, Koban, Larson, Pemberton, Pressley and Slusser. He signed the SPA and received $1,500,000 severance pay.

Francis was offered employment. He did not state the amount of his salary with Health or proposed salary with Columbia. He signed the SPA and received three years salary as severance pay. In January, 1996, he organized a new corporation.

Griffin left Health in July, 1995, to take a position with Connery's company. He terminated.

Hobbs accepted an offer of employment from Columbia in March, 1995, but left in July, 1995, because of dissatisfaction, and accepted other employment. He has no dissatisfaction except about the vesting of his stock. He signed the SPA and received two years severance pay amounting to about $300,000.

Hough was offered employment by Columbia, but declined and accepted other employment. He signed the SPA and received the amount due (not stated).

Kennedy was offered employment by Columbia, but declined and organized his own company. He signed a TPA and received all due thereunder (amount not stated). He claims the value of his stock because he was terminated without cause.

Koford voluntarily resigned from Columbia to join Connery's company. He never requested or received severance pay and does not claim it.

Lambert was offered employment with Columbia but declined and accepted other employment. His answer about severance pay is equivocal but his only complaint is about the stock.

Larson voluntarily resigned and had no SPA agreement.

Martin declined employment with Columbia and joined in organizing a new company. He received his due under the SPA (amount not stated). His only complaint is about the stock.

McCain signed the SPA and received 2 years severance pay (amount not stated). He was offered employment by Columbia, but declined and accepted other employment.

Moore accepted employment by Columbia, but quit on April 30, 1995, and accepted other

employment. He made about $116,000 with Health. He did not claim severance pay.

Pemberton accepted employment with Columbia, but quit to accept other employment. His only claim is for vested stock.

Pressley contributed no material information.

Price stated she was offered employment but not comparable employment, has not sought other employment, signed TPA and received terminal pay (amount not stated).

Rossmann contributed no material information.

Slusser accepted employment with Columbia, but quit in August, 1995, because of change of duties. He signed the SPA and received severance pay (amount not stated). He accepted other employment.

Thorpe accepted employment with Columbia, but quit in March, 1996, to accept other employment. He stated no claim except the time of the vesting of stock.

Wallace was offered employment with Columbia but declined because of location, and accepted other employment and did not apply for severance pay. He accepted refund of the purchase price of stock. No complaints.

Watson resigned to pursue other interests. Made no complaint.

A summary of the background and termination of the appellants is as follows:

Declined offer of employment and *received severance pay* —

> Connery
> Hobbs
> Kennedy
> Lambert
> Martin
> McCain
> Price
> Slusser
> Francis
> Hough

Declined offer of employment and did not ask for severance pay—

> Moore
> Wallace

Voluntarily resigned and *did not claim termination without cause* —

> Griffin
> Koford
> Larson
> Pemberton
> Thorpe
> Watson

The foregoing includes all of the 18 appellants before this Court in this appeal.

The first 10 appellants named above, effectively waived any further pay from defendants.

The remaining appellants waived severance pay by their testimony.

In summary, the issues presented by the parties are resolved as follows:

### Appellants' First Issue

Plaintiffs were not entitled to summary judgment as to the date they were entitled to possession and full benefit of the actual value of restricted stock purchased by them under the stock purchase plan.

### Appellants' Second Issue

Defendants were entitled to summary judgment as to their liability for appreciated value of the restricted stock purchased by appellants.

### Defendants' First Issue

Appellant's rights to possession and full benefits of the restricted stock purchased by them did not vest upon the merger of Health and Columbia.

### Defendants' Second Issue

Appellants who refused continued employment or resigned were not entitled to termination pay.

### Defendants' Third Issue

The appellants who accepted or failed to timely claim termination waived any further claim to termination pay.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellants. The cause is remanded to the Trial Court for further necessary proceedings.

AFFIRMED AND REMANDED

WILLIAM B. CAIN, J., concurs.

BEN H. CANTRELL, J., concurs in separate opinion.

BEN H. CANTRELL, Judge, concurring.

I concur in Judge Todd's opinion affirming the grant of summary judgment to the defendants. I write separately simply to emphasize the following points:

First, the bonus plan allowed the plaintiffs to purchase shares of the company at a price below the market price. When the plaintiffs left the company before the shares fully vested, they did not forfeit their investment; they simply lost the difference between what they had invested and the market value of the shares. The difference in the purchase price and the market value is what this controversy is about.

Second, the plan gave the compensation committee the power to "waive any conditions for the lapse or termination of restrictions with respect to all or any portion of the Restricted Stock or Restricted Units." Sec. 8(b) of the 1990 Plan. When the committee issued the restricted stock in October of 1994—with the merger of the company with Columbia HCA Corporation pending—it specifically pointed out that vesting would not accelerate in the event of a "change in control," a condition that would have resulted in vesting under Sec. 18(h) of the plan. Therefore, the restricted stock did not vest when the two companies merged.

Finally, I think the undisputed facts show that the plaintiffs voluntarily left the company. Therefore, they could not take advantage of the provision that the restricted stock would fully vest upon termination without cause.